J-S01001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2350 EDA 2019 |

Appeal from the Order Entered July 17, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-001411-2017,
CP-51-DP-0001507-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.N.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2353 EDA 2019 |

Appeal from the Decree July 17, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-001411-2017,
CP-51-AP-0000488-2019

BEFORE:   BOWES, J., KUNSELMAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 13, 2020**

M.D. ("Mother") appeals from the decree entered on July 17, 2019, that

granted the petition filed by Philadelphia Department of Human Services

---

[*] Retired Senior Judge assigned to the Superior Court.

("DHS") to involuntarily terminate her parental rights to her son, Z.D. a/k/a

Z.N.D. ("Z.D.").[1]  We affirm.[2]

The trial court summarized the procedural and factual history as follows:

> The relevant facts and procedural history of this case are as follows:  [Z.D. was born in December 2016, and] has been in care continuously since June 6, 2017[, when DHS obtained an order of protective custody because the child lacked appropriate care and Mother could not be located].  On October 10, 2017, [Z.D.] was adjudicated dependent and committed to DHS because [Z.D.] "is without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals."  [DHS filed the goal change and termination of parental rights petitions on July 2, 2019.]  At a [combined goal change/termination] hearing held by this [c]ourt on July [1]7, 2019,[3] Jacob Kittel, the case manager[,] Turning Points for Children, testified that DHS first became aware of [Z.D.] and his family when a report was called in where [Z.D.] had not

_____

[1] By separate decrees entered the same date, the trial court involuntarily terminated the parental rights of any unknown father and putative father.  No unknown father or putative father has filed an appeal or is a party to the instant appeals.

[2] Mother also appealed the contemporaneous juvenile court order changing Z.D.'s permanent placement goal from reunification to adoption.  On September 30, 2019, we consolidated the appeals *sua sponte*.  However, since Mother neglected to oppose the goal change in the statement of questions involved section of her brief or present any argument related to the goal change in her brief, that claim is waived.  *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").  Hence, we affirm the goal change order without further discussion.

[3] Mother attended the hearing and was represented by counsel.  Then two-and-one-half-year-old Z.D. was represented by a guardian *ad litem* and a child advocate.  In addition to Mr. Kittel, DHS presented H.O., foster mother ("Foster Mother"), as well as Exhibits DHS 1 through 3.  The child advocate presented the testimony of Roya Paller, a forensic social worker, whose report was admitted as Exhibit C-1.  Mother did not present any evidence.

been seen by a doctor "from 17 days old to four months old." It was also reported that [Z.D.] was born positive for marijuana.

Based on those concerns, Mr. Kittel further testified that his agency established case plan objectives that remained constant throughout the life of the case. Mother's single case plan [("SCP")] objectives throughout the life of the case were as follows: (1) attend CEU ("Clinical Evaluation Unit") for a dual diagnosis: (2) attend three random drug screen[s] prior to hearings; (3) attend supervised visitation at the agency; (4) attend ARC ("Achieving Reunification Center") for employment, housing, and parenting; (5) attend NET West after she completed the dual diagnosis. In regards to Mother's compliance with her [o]bjectives, Mr. Kittel testified that Mother was non-compliant with her goals. Mother "did not attend a random screen until . . . April".

Mother was also offered supervised visits with [Z.D. during 2017] at the agency but Mother hadn't been consistently visiting. Mother's last visit with [Z.D.] was on 1/23/19. Mr. Kittel testified that there ha[d] been 51 documented visitations offered throughout the life of the case and that "since 2017, [Mother] has missed a total of 27 of those 51 visits." Mr. Kittel further testified that there doesn't seem to be evidence of a bond between Mother and [Z.D.].

With respect to [Z.D.], Mr. Kittel testified that [Z.D.] refers to the foster [p]arent [-a preadoptive resource-] as Mom and that [Z.D.] is bonded with the foster parent. Mr. Kittel also testified that [Z.D.] "has all the love and care" in the foster home, that "all his needs are being met,["] [and that he] has ["]built . . . a relationship with his foster mother as well as his foster brother . . . and . . . seems to [just] be [doing] extremely well" in that home. Mr. Kittel further testified that he believes that it would be in the best interest of [Z.D.] that Mother's right[s] be terminated.

Based on the foregoing testimony, this [c]ourt issued a[n order] changing the permanent plan goal for [Z.D.] to adoption, and [a decree] involuntarily terminating Mother's parental rights under 23 Pa.C.S.A. §§ [2511(a)(1)], (2), (5), and (8), and finding, in accordance with 23 Pa.C.S.A. § 2511(b), that such termination best serves the developmental, physical, and emotional needs and welfare of [Z.D.].

Trial Court Opinion, 10/8/19, at 1-3 (citations to record omitted).

Mother filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). She raises the following issues for our review:

1. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) without clear and convincing evidence of [M]other's intent to relinquish her parental claim or refusal to perform her parental duties.

2. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties.

3. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) without clear and convincing evidence to prove that reasonable efforts were made by [DHS] to provide [M]other with additional services and that the conditions that led to placement of [Z.D.] continue to exist.

4. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(8) without clear and convincing evidence that the conditions that led to placement of [Z.D.] continue to exist when [M]other presented evidence of compliance with the goals and objectives of her family service plan.

5. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(b) without clear and convincing evidence that there is no parental bond between [M]other and [Z.D.] and that termination would serve the best interest of [Z.D.].

Mother's brief at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and

- 4 -

credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, [9 A.3d 1179, 1190 (Pa. 2010)].

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). As we previously stated, "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G. & J.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Thus, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the

child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decree pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), and (b).

With regard to termination of parental rights pursuant to § 2511(a)(2), we have indicated,

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). Hence, "[p]arents are required to make diligent efforts towards the reasonably

prompt assumption of full parental responsibilities . . . [, and] . . . [a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, *supra* at 340 (internal quotation marks and citations omitted).

In concluding that DHS presented clear and convincing grounds to terminate Mother's parental rights pursuant to § 2511(a)(2), the trial court stated as follows:

> Applying [*M.E.P.*] and the elements set forth under [§] 2511(a)(2) to the instant case, it is clear that DHS met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under [§] 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to care for [Z.D.]
>
> Mother failed to cooperate with her goals throughout the life of the case, including parenting classes and visitation. Parenting classes are important given that [Z.D.] was adjudicated dependent based on the fact that [Z.D.] was "without proper care or control". Mother also failed to establish any stability in her life with regard to housing. Moreover, the evidence established that "neglect" existed given that Mother had missed most of the visits with her [c]hild. This [c]ourt found that [M]other's failure to comply with her goals and consistently visit [Z.D.] has left [Z.D.] without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Mother. Based on the foregoing, this [c]ourt found that competent evidence existed to justify the termination of Mother's parental rights pursuant to [§ 2511(a)(2)].

Trial Court Opinion, 10/8/19, at 7 (citations omitted).

Mother argues that she has remedied the conditions that caused Z.D. to be placed in DHS's care and has the present capacity to parent her son. Mother's brief at 12. She asserts,

> Mother, M.D., has documented a present capacity to care for her child. Mother has successfully engaged in the drug and alcohol program at NET W[est]. Mother has documented her continued sobriety by consistently provid[ing] negative drug screens at CEU and NET West. Mother completed the housing at ARC and has secured appropriate housing. Mother has completed the employment program at ARC and is gainfully employed. Mother has completed the parenting program at ARC, and most importantly, she is actively parenting [Z.D.]'s brother after reunification with him. No evidence was offered at the termination of parental rights hearing to indicate that [M]other lacks the present capacity to care for [Z.D.] Rather, [M]other has resolved the issues that contributed to the adjudication of [Z.D.] and his brother and has established her present capacity to parent both of her children.
>
> There are no grounds to terminate [M]other's parental rights under [§ 2511(a)(2)] because there is no clear and convincing evidence of present incapacity and all conditions that contributed to her previous incapacity have been remedied.

*Id*.

As we outline *infra*, the certified record supports the trial court's determination that statutory grounds for termination exist under § 2511(a)(2). Stated plainly, contrary to Mother's assertions, Mother failed to complete the objectives of the single case plan.

As the trial court highlighted in the Rule 1925 opinion, Mr. Kittel testified that Mother's objectives included attending CEU for a dual diagnosis and submitting random drug screens prior to hearings. After completing dual diagnosis, she was required to attend NET West, supervised visitation, and

ARC for counseling in employment, housing, and parenting. N.T., 7/17/19, at 9. Mr. Kittel confirmed that Mother's compliance with these objectives declined from "moderately compliant" on February 13, 2018, to "minimal[ly]" compliant on December 4, 2018, and "no compliance" on March 13, 2019. *Id*. at 20-21.

Mother initially failed to complete the CEU dual diagnosis assessment during October 2017. However, following a subsequent order she eventually completed the assessment in April of 2018. Mother tested positive for cannabis during January, April, and September 2018. *See* DHS Exhibit 3. Her court-ordered participation with NET West followed a similar path. While she ultimately completed the intake for NET West on April 4, 2019, and attended intensive outpatient since that date, she was previously discharged from the program in 2018 for lack of attendance, and she failed to attend multiple random drug screens. N.T., 7/17/19, at 10-11, 13-14, 18-19. Specifically, Mr. Kittel reported Mother's failure to submit twenty-eight random drug screens between August 28, 2018 and April 1, 2019. *Id*. at 15-16. Moreover, in February 2019, Mother gave birth to a second child who tested positive for marijuana. *Id*. at 16-17.

With regard to ARC, Mr. Kittel related that Mother failed to satisfy the requirements of the ARC program. She did not complete parenting classes, and she lacked appropriate housing for Z.D. Mr. Kittle explained that Mother "resides in a home in which she has one bedroom where [she] and her . . . newest-born baby . . . reside." *Id*. at 9. The bedroom had space only for

Mother's bed and a crib. *Id*. at 32-22. Moreover, as it relates to the employment component, despite holding different jobs as a cook since Z.D.'s placement, Mother was unemployed when the hearing occurred. *Id*. at 9-10.

Lastly, as to visitation, Mr. Kittel explained that Mother was to have weekly supervised visitation with Z.D. at the agency. *Id*. at 19. He testified that, of the fifty-one total visits offered since 2017, Mother attended twenty-seven. *Id*. at 19-20. Her last visit with Z.D. was on January 23, 2019, approximately five months before DHS filed its petition to terminate her parental rights. *Id*. at 19. Eventually, Mother was removed from the visitation schedule because she had missed three consecutive visits.

The foregoing evidence belies Mother's claim of compliance with the court-ordered services and substantiates the trial court's conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused Z.D. to be without essential parental control or subsistence necessary for her physical and mental well-being, and Mother cannot or will not remedy this situation. *See In re Adoption of M.E.P.*, *supra* at 1272. Accordingly, we do not disturb it.

We next determine whether the court erred in concluding that terminating Mother's parental rights served Z.D.'s needs and welfare pursuant to § 2511(b). As to § 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love,

comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa.Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, ***supra*** at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, ***supra*** at 1121 (internal citations omitted).

In finding that the termination of Mother's parental rights served Z.D.'s developmental, emotional, and physical needs and welfare pursuant to § 2511(b), the trial court reasoned as follows:

> In the instant matter, this [c]ourt determined that [Z.D.] would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony that [Z.D.] is not bonded with Mother. Mother failed to offer any evidence establishing the existence of a parent-child bond. The testimony demonstrated that [Z.D.]'s primary bond is with [his pre-adoptive] foster parent and that the foster parent assist[s] [Z.D.] with [his] daily needs. Additionally, in determining that termination would best serve the needs and welfare of [Z.D.], this [c]ourt considered that Mother had not been able to meet [Z.D.]'s

- 12 -

emotional, physical, and developmental needs, or provide [Z.D.] with a healthy, safe environment for almost two years. Furthermore, this [c]ourt found Mother's numerous missed visits creates a situation where she is unable to foster a meaningful and healthy parental connection.

Trial Court Opinion, 10/8/19, at 10 (citations to record omitted).

Mother argues that termination of her parental rights is not in Z.D.'s best interest since she and Z.D. have a "strong emotional bond," and because termination would sever any relationship between Z.D. and his sibling. Mother's brief at 14. Mother asserts,

Mother and her child have a strong emotional bond. Mother was [Z.D.]'s exclusive caregiver during the first 6 month[s] of [Z.D.]'s life. Mother breastfed [Z.D.], fed him, bathed him and nursed him back to health when he was ill. An indisputable and unbreakable bond between mother and child was formed during this formative period that was crucial to [Z.D.]'s development and well-being. Mother visited with her child after adjudication despite CUA's failure to offer assistance with transportation. Mother only missed an average of 9 visits a year, often overcoming tremendous obstacles to attend visits. Additionally, termination of [M]other's parental rights has destroyed the bond between [Z.D.] and [his sibling]. No evidence was presented at the termination of parental rights hearing to establish that destroying this fraternal bond would be in the best interest of the child.

There are no legal grounds to terminate [M]other's parental rights under [§ 2511(b)] because there was no clear and convincing evidence offered at trial to establish that termination would serve the best interest of [Z.D.]. Mother has established that a strong emotional bond exists between her and her child, and that she can provide for [Z.D.]'s needs. Termination of [M]other's parental rights would not best serve the developmental, physical and emotional needs of [Z.D.]. Mother has a strong emotional bond with her child, and termination of [M]other's parental rights would severely and irreparably harm [Z.D.] emotionally.

*Id*.

- 13 -

Again, we discern no abuse of discretion. Critically, Z.D. has been placed in his pre-adoptive resource home since June 2017, when he was five months old.[4] N.T., 7/17/19, at 8, 25, 39-40. Z.D. is thriving in that environment, and he bonded with his Foster Mother, whom he calls mom, as well as his foster brother. *Id*. at 22, 24-26, 40, 47. Mr. Kittel stated,

> [Z.D.] has been residing in this . . . home since June of 2017. For the majority of his life that he's been there, he's only known this home as his. He has all the love and care that he gets in the home. He's up to date with medical and dental. All his needs are being met in this home. He attends child -- daycare. He's built a relationship with his foster mother as well as his foster brother and seems to just be doing extremely well in this home.

*Id*. at 26. Further, when asked to describe how Z.D. and his four-year-old foster brother, [P.], get along, Mr. Kittel indicated, "Very, very well. . . . [Z.D.] follows [P.] around all the time." *Id*. at 24. Moreover, Mr. Kittel testified that there is **no** bond between Z.D. and Mother, who had not visited in approximately five months at the time of the hearing. *Id*. at 22. While he observed a positive interaction between Mother and Z.D. in late fall/early winter 2018, but there is no evidence that the connection that Mother felt toward her son was reciprocal. *Id*. at 35-36. Accordingly, he opined that it would be in Z.D.'s best interest to terminate Mother's parental rights. *Id*. at 23. He expressed that, while Z.D. would experience harm if separated from

---

[4] We observe that the witnesses appear to incorrectly indicate that Z.D. had been in care since he was four months old. As Z.D. has been in care since June 6, 2017, he would have been in care since he was just over five months old.

Foster Mother, he would not suffer any harm if Mother's parental rights were terminated. *Id*. at 22-23.

Roya Paller, Z.D.'s forensic social worker, confirmed Mr. Kittel's position that Z.D. does not know Mother. *Id.* at 49. She further testified,

> [Z.D.] has been in the home since he was four months old. So, truthfully, it is really the only home he's known. And because bond at that age is so important, the maintaining of the visits would seal the bond. And[,] because the visits have not been consistent, his bonding has been to his foster mother.

*Id*. at 47. Ms. Paller similarly recognized that Z.D. would experience harm if removed from his current foster home. She stated, "[T]he thing is that he's so bonded because this is just a functioning family home that the severing of that bond would cause undue trauma[.] . . . It would be removing a child from what child perceives as mother, brother, and home for no apparent reason." *Id*. at 47. She ultimately opined, "I think it would be [an] unnecessary traumatic event to remove [Z.D.] from a very stable, loving home because it's all he knows." *Id.* at 49.

Thus, notwithstanding Mother's protestations to the contrary, there is no evidence of "[a]n indisputable and unbreakable bond" between her and Z.D., that was formed during the first five months of the child's life. Mother's brief at 14. Likewise, the record is bereft of evidence that would demonstrate a bond between Z.D. and his sibling in Mother's care. To the contrary, the certified record supports the trial court's finding that Z.D.'s developmental, physical and emotional needs and welfare favor terminating Mother's parental

rights pursuant to § 2511(b) so that he can be adopted by Foster Mother. **See T.S.M.**, **supra** at 267.

While Mother may profess to love Z.D., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. **In re Z.P.**, **supra** at 1121. At the time of the hearing, Z.D. had been in placement for approximately two years, almost his entire life, and he is entitled to permanency and stability. As this Court previously stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **Id**. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." **In re B., N.M.**, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S. § 2511(a)(2) and (b), and changed Z.D.'s permanent placement goal to adoption.

Decree affirmed. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/20